**In re Anthony R. GIORDANO, Debtor.**

Civ. A. No. 94–421L.

United States District Court,
D. Rhode Island.

Oct. 25, 1995.

Geoffrey A. Regan, Kirshenbaum & Kirshenbaum, Cranston, RI, for appellant (Monzack).

Robert D. Wieck, Providence, RI, for appellees (Cherenzias).

Sheryl Serreze, U.S. Trustee, Providence, RI.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is now before the Court on appeal from an Order issued on June 27, 1994, by Judge Arthur Votolato of the United States Bankruptcy Court for the District of Rhode Island. Jurisdiction is conferred on this Court by 28 U.S.C. § 158(a). Appellant, Jason D. Monzack, trustee in bankruptcy ("Trustee"), seeks review of the Bankruptcy Court's Order granting Frances G. Cherenzia and Salvatore Cherenzia, III, appellees, relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2). For the reasons that follow, the Bankruptcy Court's Order is affirmed.

### I. Facts

The underlying facts in this case are undisputed. Frances G. Cherenzia and Salvatore Cherenzia, III (the "Cherenzias") are the surviving spouse and son, respectively, of Salvatore Cherenzia, Jr. ("Sal Cherenzia").

Sal Cherenzia and Anthony R. Giordano ("Giordano") were co-owners of Rosalini's, Inc. ("Rosalini's"), a corporation that operated a Connecticut restaurant. Rosalini's leased the land on which the restaurant was located from Giacchio A. Faulise ("Faulise"), and both Sal Cherenzia and Giordano had personally guaranteed Rosalini's obligations under the lease.

Following Sal Cherenzia's death in December 1986, Faulise threatened legal action against Sal Cherenzia's Estate to recover for tax liabilities he incurred on behalf of Rosalini's. In consideration of Faulise abandoning his legal action, the Cherenzias and Giordano agreed, pursuant to a written contract, to assume Sal Cherenzia's obligations under his personal guarantee of the lease. When Faulise's tax liability increased, he sued the Cherenzias on their personal guarantees, and obtained a settlement of $130,000 from them.

On September 11, 1991, the Cherenzias, individually and on behalf of Sal Cherenzia's Estate, commenced suit in Rhode Island Superior Court against Giordano seeking, inter alia, contribution for their payments to Faulise. On October 4, 1991, pursuant to a consent order, the Cherenzias obtained and filed a writ of attachment on certain real property in Rhode Island owned by Giordano. Before any judgment was obtained in that state court action, however, on February 16, 1993, Giordano filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode Island, thereby activating the protection of the automatic stay. *See* 11 U.S.C. § 362(a) (1988).

On March 23, 1994, the Cherenzias moved, pursuant to 11 U.S.C. § 362(d)(2), for relief from the automatic stay. The Trustee objected to the Cherenzias' motion, arguing that the Cherenzias' pre-judgment attachment of Giordano's real property did not create a perfected lien superior to the Trustee's rights in the property. On June 27, 1994, Judge Votolato held that the Cherenzias' pre-judgment attachment constituted a valid and perfected judicial lien, as of the date it was recorded, superior to the rights of the Trustee. *In re Giordano*, 169 B.R. 12, 13 (Bankr.D.R.I.1994). Therefore, Judge Voto-

lato granted the Cherenzias' motion to lift the automatic stay under 11 U.S.C. § 362(d)(2). *Id.* The Trustee appealed that decision to this Court pursuant to 28 U.S.C. § 158(a). Briefs were filed and argument was offered by both sides in open court, then the matter was taken under advisement. It is now in order for decision.

## II. Standard of Review

■ In reviewing the Bankruptcy Court's Order, this Court must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. Fed.R.Bankr.P. 8013; *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir. 1992); *In re Guilbert*, 176 B.R. 302, 305 (D.R.I.1995). This Court, however, will review all legal conclusions de novo. *In re LaRoche*, 969 F.2d at 1301; *In re Guilbert*, 176 B.R. at 305.

## III. Analysis

The filing of a bankruptcy petition imposes an automatic stay on "any act to create, perfect, or enforce any lien against property of the estate" and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case." 11 U.S.C. § 362(a)(4), (5) (1988). The Bankruptcy Code defines three types of liens: judicial liens, security interests and statutory liens. 11 U.S.C. § 101(36), (51), and (53) (Supp. V 1993). This case involves a judicial lien which is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36) (Supp. V 1993).

Relief from the automatic stay is available, however, on request of a party in interest and after notice and hearing,

> with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2) (1988).

At any hearing concerning relief from the automatic stay the party requesting relief

has the burden of proof on the issue of the debtor's equity in property, while the party opposing relief bears the burden on all other issues. 11 U.S.C. § 362(g) (1988).

The requirements of § 362(d)(2) have clearly been satisfied in this case. The Trustee has stipulated that since the Cherenzias' contribution claim against Giordano exceeds the value of the property in the Giordano Estate, the debtor has no equity in the real property subject to the writ of attachment. Similarly, the Trustee has stipulated that since rehabilitation of the debtor is unlikely, the real property subject to the writ of attachment is not necessary to an effective reorganization.

■ The Trustee argues, however, that although the requirements of 11 U.S.C. § 362(d)(2) have been satisfied, the Cherenzias are not entitled to relief from the automatic stay because their pre-judgment writ of attachment does not give them a perfected lien, superior to the Trustee's § 544(a) rights in the debtor's property. This Court disagrees with the Trustee and holds that the Cherenzias are the equivalent of secured creditors with respect to the attached real property.

Upon the filing of a bankruptcy petition, the trustee is given the rights and powers of a hypothetical judicial lien creditor, and may avoid any transfer of property or obligation incurred by the debtor that is voidable by such a lien holder. 11 U.S.C. § 544(a)(1) (1988). Similarly, the trustee, as of the commencement of the case, has the status of a hypothetical bona fide purchaser of real property. 11 U.S.C. § 544(a)(3) (1988). As such, the trustee may avoid any transfer of the debtor's property that is voidable by a bona fide purchaser. *Id.*

■ Although federal law grants the trustee avoidance powers under § 544(a), state law governs the extent of the trustee's rights, remedies and powers as a hypothetical lien creditor or bona fide purchaser. *In re Cushman Bakery,* 526 F.2d 23, 30 (1st Cir.1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); *Carina Mercury, Inc. v. Igaravides,* 344 F.2d 397, 400 (1st Cir.1965); *Collier on Bankruptcy,* § 544.02

at 544–9 (15th ed. 1993). Similarly, state law governs the nature of the lien established by the Cherenzias' pre-judgment attachment, and their rights and priorities with respect to the attached real property. *Cohen v. Wasserman,* 238 F.2d 683, 686 (1st Cir.1956); *Yumet & Co. v. Delgado,* 243 F. 519, 521 (1st Cir.1917). Therefore, the Court must look to the law of Rhode Island, the state in which Giordano's real property is located, to determine which party has priority over it.

In Rhode Island an attachment may be obtained pursuant to a court order after notice and hearing, or ex parte upon motion by the complainant in a civil action of an equitable character. R.I.Gen.Laws § 10–5–2, § 10–5–5 (1985). A writ of attachment upon real property can be recorded by leaving an attested copy of the writ with the town clerk or the recorder of deeds of the town in which the real property is situated. R.I.Gen.Laws § 10–5–9 (1985). Recordation is considered constructive notice to all persons of the matters recorded. R.I.Gen.Laws § 34–13–2 (1984).

■ Under Rhode Island law, an attachment creates a perfected lien on the attached property when it is recorded. An attachment "creates a lien on the property attached which is held in the custody of the law to satisfy such judgment or decree as the plaintiff may obtain." *In re Gibbons,* 459 A.2d 938, 939 (R.I.1983) (quoting *Everett v. Cutler Mills,* 160 A. 924, 925 (R.I.1932)). "The later judgment does not create a new lien, but relates back to satisfy the earlier attachment by subjecting the attached property to satisfaction of the subsequent judgment." *In re Gibbons,* 459 A.2d at 939 (quoting *In re Suppa,* 8 B.R. 720, 722 (Bankr.D.R.I.1981)). "An attachment upon real property therefore constitutes a lien thereon from the date it is filed in the records of land evidence pursuant to judicial authorization." *Bonniecrest Dev. Co. v. Carroll,* 478 A.2d 555, 559 (R.I.1984).

Under the relation back principle, the Cherenzias' rights in the attached real property are superior to the Trustee's § 544(a) rights. The Cherenzias had a valid and perfected lien on the debtor's real estate as of October 4, 1991, the date they obtained and recorded their writ of attachment. Conse-

quently, the Cherenzias' lien is superior to the Trustee's hypothetical lien under § 544(a)(1), as it was first in time. R.I.Gen. Laws § 9–26–30, § 9–26–31 (1985). Similarly, the Trustee, as a bona fide purchaser under § 544(a)(3), would take the property subject to the Cherenzias' attachment. R.I.Gen.Laws § 34–13–2 (1984); *Bonniecrest Dev. Co.*, 478 A.2d at 559. Therefore, the Cherenzias' pre-judgment attachment constitutes a valid and perfected "judicial lien" under 11 U.S.C. § 101(36) on the real property attached, making them secured creditors under 11 U.S.C. § 506. *See In re Carlos A. Rivera, Inc.*, 130 B.R. 377, 383 (Bankr. D.P.R.1991).

■ The Trustee argues that a writ of attachment does not create a perfected lien until the holder reduces his claim to judgment. In support of his position the Trustee relies on the "choateness doctrine" under which a lien becomes choate, and therefore perfected, when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. McDermott*, —— U.S. ——, ——, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)). The "choateness doctrine", however, is a federal common law principle which has been limited in its application to cases involving priority disputes between federal tax liens and non-federal liens. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734, 99 S.Ct. 1448, 1461–62, 59 L.Ed.2d 711 (1979); *Federal Land Bank of Wichita v. Ferguson*, 896 F.2d 1244, 1246 (10th Cir. 1990).

■ The "choateness doctrine" is inextricably linked to the nature of the federal tax lien and thus, should not be applied in this case. "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 49, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). The "choateness doctrine" was developed to ensure that states could not arbitrarily affect the standing of federal liens. *New Britain*, 347 U.S. at 86, 74 S.Ct. at 370–71. The extraordinary

priority accorded federal tax liens is justified by the unique role of tax collection in the functioning of the federal government. *Kimbell Foods*, 440 U.S. at 734, 99 S.Ct. at 1461–62.

■ The determination of the priority between the Trustee under § 544(a) and the Cherenzias, holders of a state law attachment, however, is exclusively a question of Rhode Island law. *In re Cushman Bakery*, 526 F.2d at 30. Although Congress could have legislated in this area, it has not done so. "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Property interests are created and defined by state law; unless an important federal interest is present, state law results should be mirrored in bankruptcy. *Id.* at 55, 99 S.Ct. at 918. No strong federal interests exist in this case. Therefore, the Trustee's reliance on the "choateness doctrine" is misplaced.

In further support of his position, the Trustee cites *In re Savidge*, 57 B.R. 389, 390 (D.Del.1986), which held that a pre-judgment attachment lien, unperfected by judgment before the filing of a bankruptcy petition, was not a sufficient lien to make the holder a secured creditor. This decision, however, is in conflict with the great weight of the case law. As the Ninth Circuit explained in *In re Wind Power Systems, Inc.*, 841 F.2d 288, 293 (9th Cir.1988), the *Savidge* opinion cites no case law in support of its holding, and is undesirable as a matter of policy. The trustee's § 544 powers are designed to ensure that the equities among creditors under state law are respected within the bankruptcy proceeding. *Id.* at 292. Consequently, they reduce the incentive for filing a strategic bankruptcy petition. *Id.* The *Savidge* result, however, encourages strategic bankruptcy filings and fails to preserve state law equities among creditors. *Id.* at 293.

The Trustee also relies on *In re Posner*, 700 F.2d 1243 (9th Cir.1983), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). The *Posner* decision involved the application of former Bankruptcy Procedure

Rule 401 which stayed certain actions against the bankrupt founded on an "unsecured provable debt". The Court in *Posner* ruled that the holder of an unsecured promissory note was stayed under Rule 401 from proceeding in state court against the debtors, despite the fact that he had obtained and executed a writ of attachment upon real property of the debtors. *Id.* at 1245. According to the *Posner* Court, the pre-judgment attachment lien created an "inchoate lien unperfected until entry of a valid final judgment. The perfected lien relates back in priority to the date of the pre-judgment attachment, but it secures the judgment, not the unsecured provable debt." [1] *Id.*

The *Posner* decision, however, is inapplicable to the issue in this case. *Posner* involved the application of the stay provision of former Bankruptcy Procedure Rule 401, the purpose of which was to protect the bankrupt and the courts from needless litigation. *See David v. Hooker, Ltd.,* 560 F.2d 412, 417 (9th Cir.1977). The *Posner* Court's decision to void the state court default judgments obtained against the debtors effectuated this policy. The Court, however, stated that it was expressing no opinion as to the validity of the attachment lien or as to whether it might be brought to judgment. *In re Posner,* 700 F.2d at 1247 n. 8. In fact, the Court noted that in some cases a pre-judgment attachment creates a lien that survives bankruptcy discharge. *Id.* Instead, the relevant Ninth Circuit decision is *In re Wind Power Systems, Inc.,* 841 F.2d at 292–3, which held that, under California law, a pre-judgment attachment created a lien superior to the trustee's § 544 powers.

Therefore, this Court concludes that the Cherenzias did obtain a valid and perfected judicial lien on the debtor's real property when they recorded their pre-judgment writ of attachment. *See Cohen,* 238 F.2d at 686; *Yumet & Co.,* 243 F. at 520. As holders of a perfected judicial lien, the Cherenzias are secured creditors for purposes of 11 U.S.C.

§ 506 with respect to the real property attached, and the Trustee may not use his § 544(a) powers to avoid their claim. Since the Trustee has stipulated that the debtor has no equity in the attached property and that the property is not necessary to an effective reorganization, relief from the automatic stay pursuant to § 362(d)(2) is appropriate to allow the Cherenzias to reduce their claim to judgment and levy on the property. Consequently, the Bankruptcy Court's Order is affirmed.

## IV. Conclusion

For the reasons stated above, the Order of the Bankruptcy Court dated June 27, 1994, is hereby affirmed. The Clerk shall enter judgment to that effect forthwith.

It is so ordered.

---

**1.** The *Posner* opinion, in reaching its conclusion that an attachment lien is inchoate and unperfected until judgment, relied on *United States v. Security Trust & Sav. Bank,* 340 U.S. 47, 50, 71 S.Ct. 111, 113–14, 95 L.Ed. 53 (1950), one of a series of Supreme Court cases in which the "choateness doctrine" was used to determine the priority between federal tax liens and competing state liens. The "choateness doctrine" has been limited to priority disputes involving federal tax liens and should not be extended to questions of state law. See discussion supra.