In re AQUARIUS DISK SERVICES, INC., Debtor.

No. 99–53928–MM.

United States Bankruptcy Court, N.D. California.

Oct. 6, 2000.

Susan Sutton, The Sutton Law Group, San Jose, CA, for Don Carr and Lonne Carr.

Judith S. Suelzle, Attorney at Law, Cupertino, CA, for Mohamed Poonja, Chapter 7 Trustee.

## OPINION

MARILYN MORGAN, Bankruptcy Judge.

## I. INTRODUCTION

Don and Lonne Carr seek relief from the automatic stay in order to liquidate their claim and obtain a judgment against Aquarius Disk Services, Inc. ("Aquarius Disk") arising from a disputed lease agreement. They also request relief to enforce a prepetition attachment lien by executing on a writ of attachment. Specifically, execution would include turnover by the chapter 7 Trustee of levied funds and authority for the Carrs to collect Aquarius Disk's receivables.

This case presents an issue not yet resolved by the Ninth Circuit: Whether and under what circumstances a prejudgment attachment lienholder may obtain relief from the stay to perfect by judgment an interest in property seized under a writ of attachment. In its most recent decision regarding prejudgment attachment liens, the Ninth Circuit anticipated the issue, but left its resolution for another day. *See Diamant v. Kasparian (In re Southern California Plastics, Inc.)*, 165 F.3d 1243, 1247–48 (9th Cir.1999).

For the reasons set forth below, relief from the automatic stay is granted to allow the Carrs to liquidate their claim in state court. If the Carrs are successful in obtaining a judgment, however, enforcement against the estate by executing on the writ is prohibited, absent further order.

## II. BACKGROUND

In 1997, the Carrs and Aquarius Disk entered into a lease of the Carrs' commercial real property. The lease extended for the term from November 1997 through September 2007 and required monthly rental payments of $25,244.56. Aquarius Disk never took possession of the premises. It contends that it entered into the lease while its attorney was unavailable, in reliance on the Carrs' assurances that they would not enforce the lease if it did not receive attorney approval. The Carrs dispute this assertion. Aquarius Disk's attorney later determined that the lease was unacceptable for reasons not in the record. Although Aquarius Disk sought rescission, the Carrs refused to release it from the lease.

The Carrs sued Aquarius Disk and two of its officers in the Santa Clara County Superior Court, alleging breach of contract and fraud. The Carrs sought damages in the amount of $1,500,000 for improvements and unpaid rent. In July 1998, the Carrs obtained an *ex parte* prejudgment writ of attachment on all of Aquarius Disk's equipment, inventory, accounts receivable, and deposit accounts. California law pro-

vides a defendant with an opportunity to contest a writ and affords expedited hearings for motions to quash *ex parte* writs of attachment. It is unclear from the record whether Aquarius Disk exercised its right under California law to a hearing to challenge the issuance of the writ. Pursuant to the writ, in July 1998, the Santa Clara County Sheriff's Department levied on deposited funds totaling $55,092.30.

The parties engaged in settlement negotiations, suspending further prosecution of the litigation. After settlement discussions subsided without resolution, Aquarius Disk filed its chapter 7 petition on June 7, 1999. The Carrs were precluded by the automatic stay from proceeding in the state court action. The Sheriff's Department has since turned over to the chapter 7 Trustee the funds seized pursuant to the writ of attachment.

## III. DISCUSSION

### A. *Under California Law the Carrs' Prejudgment Attachment Lien is an Unperfected, Unsecured Interest.*

#### 1. State Law Determines the Nature of a Prejudgment Attachment Lien.

State law determines the validity and effect of liens in the bankruptcy context. *Cool Fuel v. Board Equalization (In re Cool Fuel)*, 210 F.3d 999, 1007 (9th Cir.2000). Under California's Code of Civil Procedure § 485.210, a party may obtain a writ of attachment on an *ex parte* basis, as the Carrs have done in this case. In order to obtain the writ *ex parte*, the Carrs were required to establish the probable validity of their claim and that great or irreparable harm would result absent relief. Once the writ issued, the Sheriff's levy created an attachment lien on the property from the time of the levy until three years from the date the writ was issued. Following levy, an attachment lien has priority over any subsequent liens. A judgment arising from the same claim relates back to the date of the attachment

lien, so that the attachment lien acts as a placemarker, ensuring the creditor's place in the priority line. *See generally* CAL.CIV. PROC.CODE chapters 485, 488 (1979 & West Supp.2000); *see also* 6 WITKIN, CALIFORNIA PROCEDURE, PROVISIONAL REMEDIES § 152 (3d ed.1985).

Perfection of an attachment lien occurs when the creditor obtains a judgment in the underlying action. *See United States v. Security Trust & Savings Bank of San Diego*, 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53 (1950), *superceded by statute as stated in In re Estate of Romani*, 547 Pa. 41, 688 A.2d 703 (1997), *aff'd*, 523 U.S. 517, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998); *Arcturus Mfg. Corp. v. Superior Court*, 223 Cal.App.2d 187, 35 Cal.Rptr. 502, 505 (1964), *superceded by statute as stated in Waffer Internat'l Corp. v. Khorsandi*, 69 Cal.App.4th 1261, 82 Cal.Rptr.2d 241 (1999). A prejudgment, unperfected attachment lien, such as the Carrs', has been described as a contingent, inchoate, or potential right. *See Security Trust*, 340 U.S. at 50, 71 S.Ct. 111; *Southern California Plastics*, 165 F.3d at 1246; *Bass v. Stodd*, 357 F.2d 458, 464–65 (9th Cir.1966); *Puissegur v. Yarbrough*, 29 Cal.2d 409, 175 P.2d 830, 831 (1946).

While inchoate, an attachment lien differs from a mere unperfected interest in that it is not subject to a trustee's avoidance powers under §§ 544 and 547 if created outside the preference period. The Ninth Circuit has held that an attachment lien which has not been perfected by an underlying judgment is nonetheless not vulnerable to a trustee's avoidance powers. *See Federal Deposit Insur. Corp. v. Jenson (In re Jenson)*, 980 F.2d 1254 (9th Cir.1992); *Wind Power Systems v. Cannon Financial Group (In re Wind Power)*, 841 F.2d 288 (9th Cir.1988). Once the attachment creditor reduces its claim to judgment, the lien cannot be defeated by a subsequent judicial lien creditor. *Southern California Plastics*, 165 F.3d at 1246. The reason for the first lien's fortitude is

that the judgment relates back to the date of the attachment lien and has priority in time.

In *Wind Power v. Cannon Financial Group,* the Ninth Circuit held that the trustee could not avoid a California prejudgment attachment lien even though it was unperfected by judgment at the time the petition was filed. 841 F.2d at 292–93. The basis for the court's ruling was that the attachment lien related back to the date the temporary protective order was granted outside the preference period. The court did not decide whether the unperfected lien should be treated as secured, but noted its disagreement with other cases that had treated liens as unsecured under similar circumstances.

In *Federal Deposit Insurance Corporation v. Jenson,* the Ninth Circuit ruled that a Nevada prejudgment attachment lien need not be perfected by the petition date to be later treated as a secured claim. 980 F.2d at 1258. Nevada law, like California law, provides for relation back of a perfected attachment lien. *Jenson* differed from *Wind Power* because the creditor was in fact able to obtain a judgment in the underlying action during the pendency of the bankruptcy case. In that case, the federal district court presiding over the underlying litigation referred the trial of the matter to the bankruptcy court upon the agreement of the parties. The Ninth Circuit noted its willingness to permit attachment lien creditors to proceed to judgment in underlying actions. The court reiterated that, where the creditor prevails, the judgment relates back to the issuance of the writ and is immune from the trustee's strong arm powers pursuant to § 544. *Jenson,* 980 F.2d at 1259. *Accord Wind Power,* 841 F.2d at 293.

This caselaw establishes that the Carrs' attachment lien is inchoate. However, it is not vulnerable to the Trustee's avoidance powers because it arose prior to the commencement of the preference period. If perfected by a subsequent judgment in the state court action, the priority of the judg-ment would relate back to the date of the July 1998 attachment lien.

## 2. The Requirement of a Judgment for Perfection is Strictly Construed.

After *Wind Power* and *Jenson,* both the Bankruptcy Appellate Panel and the Ninth Circuit elaborated further on the nature of attachment liens under California law. *Southern California Plastics,* 165 F.3d 1243. The creditor in that case obtained a prejudgment attachment lien against the debtor's property, but the debtor filed a bankruptcy petition before the creditor could obtain a judgment on the underlying claim. The creditor filed a proof of claim in the debtor's bankruptcy, listing that portion of the claim based on the prejudgment attachment lien as secured. The bankruptcy court allowed the claim as secured, and the trustee appealed. On appeal, the trustee asserted that the claim was unsecured because the creditor had not yet perfected the lien with an underlying judgment. Because the underlying state court action had been closed, the trustee contended that it was impossible for the creditor to perfect its lien by judgment, and that under these circumstances, the claim must be treated as unsecured.

The Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court, rejecting the trustee's argument that in order to perfect the lien, the creditor was required to obtain relief from stay to proceed to judgment. *See Diamant v. Kasparian (In re Southern California Plastics),* 208 B.R. 178 (9th Cir. BAP 1997), *rev'd by* 165 F.3d 1243 (9th Cir.1999). It concluded that a judgment in state court was not the exclusive method for perfecting a prejudgment attachment lien for bankruptcy purposes. Instead, it held that the allowance of a claim in bankruptcy was the equivalent of obtaining a judgment in the underlying action and served to perfect the lien. The BAP reasoned that holding otherwise would allow a bankruptcy court to defeat

an attachment lien simply by denying relief from stay.

The Ninth Circuit reversed the BAP, concluding that the allowance of a claim in bankruptcy is not the equivalent of obtaining a judgment. *See Southern California Plastics,* 165 F.3d at 1248. The Circuit agreed with the BAP that a judgment in state court was not the exclusive method for perfecting an attachment lien, recognizing that the underlying judgment could be issued by either a state or a federal court. It nevertheless concluded that differences between the claims allowance process and the procedure for obtaining a judgment, especially differences in the burdens of proof, precluded the claims allowance process from constituting a judgment for perfection purposes. The Court recognized the quandary that it created for the creditor in *Southern California Plastics* where the underlying state action had been closed. It also recognized that under its holding, bankruptcy courts would be able to defeat attachment liens simply by denying relief from stay. It nonetheless left open the question whether relief from stay should be granted in those circumstances. Unpersuaded that the closing of the state court action left the creditor without a remedy, the Court remanded the matter for further proceedings below.

▆▆▆▆ Following *Southern California Plastics,* there is no question that the Carrs' claim is unsecured, and their attachment lien is unperfected absent a judgment in the underlying action. *Accord In re Posner,* 700 F.2d 1243, 1245 (9th Cir.1983), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). The Carrs are required to perfect their attachment lien to have an enforceable secured claim in the bankruptcy case. Because of the debtor's bankruptcy case and the pending automatic stay, the Carrs must first obtain relief from stay in order to proceed to judgment in the state court action. If relief from the stay is denied, the Carrs may still liquidate their claim by invoking the claims allowance process, but their claim would be treated as unsecured in that circumstance.

**B. *The Carrs are Entitled to Relief from the Automatic Stay.***

**1. The Policies Supporting Creditors' Rights Under State Law Conflict With the Policies Underlying the Automatic Stay.**

There is no uniformity nationwide as to granting relief from stay in these circumstances because the decisions turn on the various state laws affecting creditor's rights. Courts in other jurisdictions have determined, under other state law, that a prejudgment attachment lien is a secured, perfected interest for purposes of relief from stay. *See In re Giordano,* 188 B.R. 84, 89 (D.R.I.1995) (under Rhode Island law prejudgment attachment constitutes valid and perfected lien such that relief from stay was appropriate); *In re Carlos A. Rivera, Inc.,* 130 B.R. 377, 383 (Bankr. D.P.R.1991) (same under Puerto Rican law). *But see In re Savidge,* 49 B.R. 429, 429–30 (Bankr.D.Del.1985) (under Delaware law prejudgment domestic attachment lien not perfected or secured where judgment not obtained at time of bankruptcy filing), *aff'd,* 57 B.R. 389 (D.Del. 1986), *criticized in Wind Power,* 841 F.2d at 293. The *Giordano* and *Carlos Rivera* courts granted relief from the stay to the creditors on adequate protection grounds. However, in the Ninth Circuit, the only guidance that exists is the Circuit's acknowledgment that under certain circumstances prepetition attachment lien creditors may proceed to judgment. *See Wind Power,* 841 F.2d at 293; *Jenson,* 980 F.2d at 1258.

In requesting relief from the stay in this case, the Carrs' motion implicates two fundamental, but competing policies of the bankruptcy system. This case juxtaposes the underlying purposes of the automatic stay against the Bankruptcy Code's respect for state laws that allow creditors to perfect interests by obtaining a judgment.

■ Section 362(a) of the Bankruptcy Code provides that the filing of a petition invokes a stay that enjoins a broad range of creditor action. Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." The stay arises automatically upon the filing of a petition, but there are exceptions contained in § 362(b). Furthermore, the stay may expire on its own terms as provided in § 362(c), and a party may establish appropriate grounds for terminating, annulling, modifying or conditioning the stay pursuant to § 362(d). The Ninth Circuit has recognized that the automatic stay plays a crucial role in the bankruptcy process, protecting both debtors and creditors. *Benedor Corp. v. Conejo Enterprises (In re Conejo Enterprises)*, 96 F.3d 346, 351 (9th Cir.1996). It gives debtors breathing room from creditors, treats like creditors similarly, and is one of the fundamental debtor protections.

■ The automatic stay allows the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets. *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir.2000); *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985). It also assures that the debtor's other creditors are not racing to various courthouses to pursue independent remedies that would drain the estate's assets. *Gruntz*, 202 F.3d at 1081; *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755–56 (9th Cir.1995), *cert. denied*, 519 U.S. 863, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996).

■ In counterbalance, there is the policy by which "the bankruptcy court rewards the timely and diligent creditor." *See In re Wind Power*, 841 F.2d at 291. In *Wind Power*, the Ninth Circuit found that the creditor had shown diligence where it brought its state court action and obtained a prejudgment writ of attachment outside of the preference period and nearly four and half months prior to the debtor's bankruptcy filing. In the instant case, the Carrs brought their state court action outside of the preference period, and obtained their writ of attachment *nearly a year* prior to the date the debtor filed its bankruptcy petition.

■ In addition to rewarding diligence, the Bankruptcy Code also accords deference to state law. For example, § 362(b)(3) provides an exception to the stay for "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546." Under § 546(b)(1), if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law as of the date of the petition, the opportunity to perfect its lien against an intervening interest holder, then the lien may be perfected against the trustee. The purpose of § 546(b) is to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." S.Rep. 989, 95th Cong., 2d Sess. 86–87 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 371–72 (1977), U.S.Code Cong. & Admin.News, 5787, 6327–28.

■ Section 546(b) mandates an alternative to seizing property or commencing a lawsuit to perfect or to continue perfection of an interest. Instead, it substitutes notice to the trustee as the exclusive means for perfection or continuation of perfection. *In re Baldwin Builders*, 232 B.R. 406, 411–13 (9th Cir. BAP 1999). However, §§ 546(b) and 362(b)(3) do not apply to this case since § 546(b)(2)(B) by its terms applies only to property that has not been seized and where an action has not been commenced before the petition date. *See In re Savidge*, 57 B.R. 389, 390 (D.Del.1986) (unperfected writ of domestic attachment lien is not type of "interest in property" subject to § 546(b)). Although § 546(b) does not apply to the continuation

of pending actions as in this case, the legislative purposes and the policies underlying those sections must be taken into consideration in any analysis of whether relief from the stay is appropriate.

## 2. The Carrs Meet the Standard for Relief from the Automatic Stay.

After balancing the competing policies under the facts of this case, I am persuaded that the policies supporting state law creditors' rights prevail. The objectives of treating like creditors similarly and deterring the race to the courthouse are simply not served by denying relief from the automatic stay under these circumstances. The Carrs are unlike other unsecured creditors because they hold an unavoidable attachment lien. The diligence exhibited in enforcing their state law remedies separates them from other unsecured interests. While the automatic stay dissuades creditors from racing to the courthouse, this policy applies only to races that occur within the preference period.

While the Bankruptcy Code does not preclude granting relief from the automatic stay in this case, it is still the Carrs' burden to establish that relief would be appropriate. As unsecured creditors, the Carrs are not entitled to relief from stay on the basis of lack of adequate protection. *See In re Microwave Products of America, Inc.*, 94 B.R. 967, 970 n. 10 (Bankr. W.D.Tenn.1989). The issue then becomes whether other cause exists to warrant relief from the automatic stay. There is no clear definition for what constitutes cause for relief from stay, rather, it is determined on a case-by-case basis. *See Conejo*, 96 F.3d at 352; *MacDonald*, 755 F.2d 715, 717 (9th Cir.1985).

Cause, based on a balancing of factors, may warrant allowing a litigant to continue to pursue pending state court litigation against a debtor. *See In re America West Airlines*, 148 B.R. 920, 923 (Bankr.D.Ariz. 1993). The Ninth Circuit Bankruptcy Appellate Panel has cited with approval

*America West Airlines*, which identified various factors a court may consider in deciding whether cause exits to lift the stay to allow a creditor to proceed with pending litigation. *Id.* at 923, *cited with approval in In re Santa Clara County Fair Ass'n*, 180 B.R. 564, 567 (9th Cir. BAP 1995).

Under the circumstances of this case, a review of the *America West* factors supports permitting the Carrs to continue prosecution of the state court action. One factor the Court must consider is public policy, which in the instant case favors allowing an attachment creditor to proceed to judgment on its claim. In *Wind Power*, the Ninth Circuit referred to "a strong line of cases in this court allowing prepreference creditors to proceed to judgment." 841 F.2d at 293 (*citing In re LaFortune*, 652 F.2d 842 (9th Cir.1981) (foreclosure sale pursuant to judgment lien not avoidable); *Bass v. Stodd*, 357 F.2d 458 (9th Cir.1966) (attachment lien not avoidable); *Metcalf Bros. v. Barker*, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902) (same)). To hold otherwise would provide an incentive for a strategic bankruptcy filing that would distort priorities among creditors from what would exist outside bankruptcy proceedings. *Wind Power*, 841 F.2d at 293.

Judicial economy also would be served by continuing litigation in the forum in which it has been pending since July 1998, thereby preserving resources that have been expended to date. The presence of other non-debtor parties in the litigation, and the risk of inconsistent results, also support granting relief from the stay. While the bankruptcy court has jurisdiction and the expertise to determine the substantive merits of the litigation, these claims are based solely on state law. That the Carrs were required to establish the probable validity of their claim in order to obtain the prejudgment writ of attachment suggests that they likely will succeed on the merits. Denying relief would in effect terminate an action against the debtor that

the Santa Clara County Superior Court has determined to be meritorious.

Lastly, the Carrs' claim must be liquidated in any event. The bankruptcy claims allowance procedure does not afford the Carrs the same rights they would have under state law. Their claim is at risk of being relegated permanently to unsecured status by the bankruptcy filing. Consideration of these factors militate in favor of granting relief to the Carrs to proceed to judgment in the state court action.

## IV.  CONCLUSION

The circumstances of this case warrant granting relief from the stay for cause pursuant to § 362(d) for the limited purpose of allowing the Carrs to liquidate their claim in the pending state court action. The Trustee shall retain possession of the levied funds and may continue to collect the estate's receivables until further order of the Court. Further relief is required before the Carrs may proceed with the enforcement of any judgment obtained.