**In re INDIAN RIVER ESTATES, INC., Debtor.**

No. 02–36330.

United States Bankruptcy Court, N.D. Ohio.

March 17, 2003.

Thomas G. Ilstrup, Toledo, OH, for debtor.

Dana M. Farthing, Dusty Renee Tinsley, Cooper & Walinski LPA, Toledo, OH, foe creditors.

Saul Eisen, Office of the U.S. Trustee, Cleveland, OH, U.S. Trustee.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a final hearing on the Motion by Preferred Properties Inc., a creditor, for an Order Requiring the Debtor–in–Possession to Execute a Sales contract for Real Property held in Constructive Trust. In its Motion, Preferred Properties requests a number of forms of relief, including relief from the automatic stay of 11 U.S.C. § 362(a), injunctive relief and findings of fact regarding the status of real property. (Doc. No. 56). The Debtor–in–Possession has objected to this Motion, arguing that the disposition of the real property at issue in this case may be properly handled through its Chapter 11 bankruptcy. As it concerns this matter, the Court, after considering the arguments raised by the Parties, including those arguments submitted by the Parties' in their Memoranda to the Court, finds that the Motion of Preferred Properties, Inc. should be Granted in Part and Denied in Part.

### FACTS

The Debtor–in–Possession, Indian River Estates, Inc. (hereinafter DIP), is a land development company whose primary business has involved developing subdivisions. The company is owned by Duane Tillimon who is both the President and the sole shareholder of the DIP.

Preferred Properties is a nonprofit housing development corporation. In 1997 Preferred Properties executed an option contract with the DIP to purchase eight of 23 lots in a residential subdivision. The purpose of this project was to construct affordable housing for disabled persons with mobility impairments. In accordance with the Parties' contract, the DIP platted lots specifically tailored for Preferred Properties use. (Doc. 44, at pg. 6). In addition, Preferred Properties obtained funding from the U.S. Department of Housing and Urban Development to support the project. (Doc. 28, at pg. 2).

Later, for reasons which are not relevant in this case, Preferred Properties

sued the DIP and Mr. Tillimon in federal district court, alleging two causes of action: (1) breach of contract; and (2) discrimination against handicapped persons in the sale of real property in violation of both state and federal housing laws. On March 10, 2000, after a jury trial, the DIP was found liable on both these causes of action. Judgment was thereafter rendered against the DIP in the amount of One Hundred Fifty-six Thousand Five Hundred dollars ($156,500.00), plus interest. (Doc. 28, Exhibit C).

In addition to awarding monetary damages, the district court, with the Honorable Judge David A. Katz presiding, also issued an ordered requiring the DIP and Mr. Tillimon to sell to Preferred Properties the eight plots in the subdivision developed by the DIP.[1] The actual terms of this order for specific performance provided:

> ... Plaintiff's Motion for a Permanent Injunction and Specific Performance (Doc. No. 72) is granted. The Defendants are permanently enjoined from refusing to sell or negotiate for the sale of property on the basis of handicap. Further, the Defendants shall execute a purchase agreement and convey to Plaintiff lot numbers 10, 12, 14, 15, 17, 19, 21, and 23 on Abygail and David's Creek's on Indian River Estates under the terms set forth in the option contract and purchase agreement, as reflected in Plaintiff's Trial Exhibits 1 and 4.

(Doc. 28, Exhibit D). This decision was subsequently upheld on appeal to the Sixth Circuit Court of Appeals. *See Preferred Properties v. Indian River Estates*, et al., 276 F.3d 790 (6th Cir.2002). Similarly, on June 28, 2002, the DIP's petition for writ of certiorari to the Supreme Court of the United States was denied. *See Indian River Estates v. Preferred Properties*, 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 838 (2002).

On September 20, 2002, the DIP filed a petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. The only significant asset listed in the DIP's bankruptcy schedules was the real property subject to Judge Katz's order for specific performance. On January 6, 2003, Preferred Properties filed the Motion at issue in the proceeding, seeking to have Judge Katz's order for specific performance enforced.

## LEGAL ANALYSIS

Determinations concerning the administration of the debtor's estate, and proceedings affecting the adjustment of the Debtor–Creditor relationship are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

Preferred Properties in this case seeks a finding that Judge Katz's order requiring specific performance created in its favor a constructive trust. In doing so, Preferred Properties seeks an order from this Court relieving the automatic stay of 11 U.S.C. § 362(a) so as to allow it to continue in its action to enforce Judge Katz's order of specific performance. (Doc. 56, at pg. 13). In addition, Preferred Properties seeks an order from the Court requiring the Debtor to execute a sales contract on the property. (Doc. No. 56, Exhibit A).

The automatic stay of § 362(a) generally stops any and all actions against a debtor to collect a debt, including orders issued by a court for specific performance. § 362(a)(1)/(2)/(3). However, pursuant to § 362(d)(1), a court may relieve the stay

---

1. In this same judgment entry Judge Katz also ordered the DIP and Mr. Tillimon to pay attorney fees of $81,579.96.

for, among other reasons, "cause." As used in § 362(d)(1), the term "cause" is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations. *In re Texas State Optical Inc.*, 188 B.R. 552, 556 (Bankr.E.D.Tex.1995).

■ In a situation such as this, where relief from the stay is being sought in order to continue the enforcement of a prior judgment, this Court in determining the existence of "cause," has applied a balancing test, whereby the interests of the estate are weighed against the hardships that will be incurred by the creditor-plaintiff. *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 566 (Bankr.N.D.Ohio 1984). For example, if lifting the stay would be unfairly detrimental to a debtor's other creditors, relief will generally not be granted. *See In re General Oil Distr., Inc.*, 33 B.R. 717 (Bankr.E.D.N.Y.1983). On the other hand, if the debtor will unlikely be able to propose a plan of reorganization, "cause" for lifting the stay will usually be found. *See In re CBJ Development, Inc.*, 202 B.R. 467, 473 (9th Cir. BAP 1996). The same is also true, if the effect on the debtor and the debtor's estate are minimal. For example, relief has been granted where a debtor merely wishes to liquidate a claim pending in a state court action. *See In re Aquarius Disk Services, Inc.*, 254 B.R. 253, 260 (Bankr.N.D.Cal. 2000); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 761 (D.N.J.1996).

As it pertains to the above balancing test, the DIP, in objecting to Preferred Properties' Motion, makes what are essentially two different arguments: (1) Judge Katz's order of specific performance is simply a "debt" or "liability on a claim" and thus subject to discharge under the provisions of Chapter 11; and (2) no constructive trust was created by Judge Katz's order requiring specific performance. Each of these positions will now be addressed in order.

### Existence of a Debt/Claim under the Bankruptcy Code

■ Only "debts" are subject to being discharged in a Chapter 11 Plan of Reorganization. 11 U.S.C. § 1141(d)(1)(A). As it applies to this principle, it is the DIP's position that Judge Katz's order of specific performance simply created a debt, and as such, it may be handled through its Chapter 11 Plan of Reorganization.

A "debt" is defined under the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). Based upon this definition, the Supreme Court of the United States has held that the terms "debt" and "claim" are essentially synonymous with one another. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Under the circumstances in this case, where an equitable remedy is at issue, § 101(5)(B) defines a "claim" as:

> right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

This definition was explained by the Supreme Court of the United States in *Ohio v. Kovacs* where, in quoting from the legislative history of the Bankruptcy Code, the Court stated:

> Section 101(4)(B) [now § 101(5)(B) ] . . . is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a

judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11.

469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985) (quoting 124 Cong.Rec. 32393 (1978) (remarks of Rep. Edwards)).

■■■ The key therefore, in determining whether an equitable remedy gives rise to a claim under bankruptcy law is to ascertain whether the equitable remedy would also give rise to a right to payment; that is, could a monetary award substitute for the equitable remedy. *In re Roxse Homes,* 74 B.R. 810, 818 (Bankr.D.Mass. 1987) (when the only remedy allowed by state law to enforce a judgment is a non-monetary one, that judgment is not a claim under § 101(5)). In making this determination, two competing, but related principles should be observed: the definition of "claim" is meant to be very broad and sweeping so as to further the "fresh-start" policy of the Bankruptcy Code, *In re UNR Indus., Inc.,* 224 B.R. 664, 669 (Bankr. N.D.Ill.1998); however conversely, § 101(5)(B) does not require that a party accept a monetary alternative if it is clearly not in proportion to the equitable remedy. *Matter of Davis,* 3 F.3d 113, 116 (5th Cir.1993).

Turning now to the specific facts of this case, the evidence presented shows that the equitable remedy of specific performance ordered by Judge Katz was meant to be in addition to any award of monetary damages. This conclusion is clearly set forth in Judge Katz's decision, where, in ordering specific performance, it was stated:

In this instance [Preferred Properties] seeks conveyance of the eight noncontiguous lots on which it had an option contract. The [DIP and Mr. Tillimon] dispute that specific performance should be ordered as the jury already awarded compensatory damages and to allow specific performance in light of these awarded damages would allow [Preferred Properties] a dual recovery. However, [the DIP and Mr. Tillimon] mischaracterize the nature of the jury award. In addition to awarding punitive damages of $125,000, the jury also awarded compensatory damages in the amount of $31,500. At the conclusion of the trial, [Preferred Properties] asked for its out of pocket costs based upon the [DIP's] failure to sell the subject properties. Furthermore, as requested in their complaint and as allowed by statute, specific performance may be ordered in addition to compensatory, punitive and other relief.

In determining the type of equitable relief which is most appropriate a court should ensure that it is tailored to address the specific discriminatory conduct in that particular case but not exceed that necessary to effect the cure.

In this instance, the jury found a willful violation of the Fair Housing Act for which it awarded both compensatory and punitive damages. The option contract, the extension of which the jury determined had been waived, indicated the price to be $27,000 per lot. As the purpose behind the statute is to remedy past wrongs, the remedy of specific performance, in this instance, directly addresses and corrects that past violation. Moreover, as [Preferred Properties] indicates that it is still intent on moving forward with this project, this relief is appropriate in light of the violation. Therefore, [Preferred Properties'] motion for specific performance is well taken and will be granted.

(Doc. 28, Exhibit D, at pg. 5) (internal citations and quotation omitted).

Additional facts also strongly suggest that Judge Katz's order for specific performance was not meant to be simply an alternative to a monetary award. Of special importance, the facts in this case indicate that the government assistance obtained by Preferred Properties for the development of the DIP's property is unique to that property. Similarly, the property has also been platted according to those specifications needed by Preferred Properties. As a result, the DIP's property is uniquely situated to further Preferred Properties' mission of helping people with mobility impairments. In this regard, it has not gone unnoticed to the Court that Preferred Properties has, through various means, been attempting to obtain possession of the property for approximately six years.

Therefore, in weighing the above considerations, the Court can only come to but one conclusion: The equitable remedy of specific performance ordered by Judge Katz cannot be properly compensated by awarding monetary damages. As such, while the monetary damages awarded to Preferred Properties may be included within the DIP's Chapter 11 Plan of Reorganization, Preferred Properties right to receive specific performance is not a claim, and thus be implication, the right of specific performance is not a debt that may be discharged in bankruptcy.

**The Existence of a Constructive Trust**

 The second issue raised in this case revolves around whether the specific performance order issued by Judge Katz created a constructive trust. A constructive trust may be defined as occurring "where a person holding title to property is subject to an equitable duty to convey it to another on ground that he would be unjustly enriched if he were permitted to retain it." *In re McCafferty*, 96 F.3d 192, 198 (6th Cir.1996), *citing Croston v. Croston*, 18 Ohio App.2d 159, 162, 247 N.E.2d 765 (1969). Section 541(d) [2] governs the impact of a constructive trust in bankruptcy by providing that when a constructive trust is at issue, the estate only inures to the debtor's legal interest in the property, and not to any equitable interest in the property which, under constructive trust law, the debtor does not own. Under bankruptcy law, this results in the beneficiary of the constructive trust being able to collect on its debt ahead of the other unsecured creditors who must participate in the prorata distribution scheme set up by the Bankruptcy Code.

The Sixth Circuit Court of Appeals has dealt quite extensively with the issue of constructive trusts and their relationship to bankruptcy law. First, in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994), the Sixth Circuit adopted a restrictive approach to the existence of constructive trusts in bankruptcy holding that a creditor's right to a constructive trust "does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment impressing defendant's property or assets with a constructive trust." Subsequent decisions by the Sixth Circuit have gradually refined this interpretation: *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir.1996), bankruptcy court's imposition of a con-

---

**2.** This section provides, in relevant part, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

structive trust may be appropriate when the res was not subject to distribution to creditors; *Kitchen v. Boyd, (In re Newpower)*, 233 F.3d 922, 936 (6th Cir.2000), a bankruptcy court may lift the stay to allow a prepetition action seeking imposition of a constructive trust to proceed to judgment.

As it pertains to the facts presented in this case, the principal case by the Sixth Circuit dealing with constructive trusts in bankruptcy is *Poss v. Morris (In re Morris)*, 260 F.3d 654 (6th Cir.2001). In *In re Morris*, the Debtor, Marilyn Morris, entered into a settlement agreement in July of 1993 in a forcible entry and detainer action with the Creditor, John Poss. Pursuant to this settlement agreement, Ms. Morris was relieved from a monetary judgment against her in exchange for which she was to convey a particular parcel or real property. Later, in September of 1993, the judge in the state court matter entered a judgment that adopted the settlement agreement, which in turn was incorporated by reference in the judge's order. The terms of the settlement, however, eventually unraveled, and after some interim events, an ex parte order was issued in July of 1995 directing the county recorder to convey the property to Mr. Poss. Later, the state court, after an evidentiary hearing, issued an order directing the sheriff to seize the property. These decisions were appealed; however, before a final decision was rendered, Ms. Morris, on September 8, 1995, filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.

■ Based upon these facts, the bankruptcy court held that the alleged conveyance of the property to Mr. Poss pursuant to the ex parte order of the state court was a nullity. The Sixth Circuit, however, reversed, holding that the bankruptcy court erred in failing to recognize that, at the moment Ms. Morris signed the settlement

agreement that contained her promise to convey the seven-acre parcel to Mr. Poss, Ohio law automatically, as an operation of law, impressed upon the property a constructive trust. *Id.* at 668. Specifically, the Court stated, "[w]here an equitable duty to convey property exists, it is not necessary for a court to impress a constructive trust by decree. Rather, in Ohio it attaches by operation of law." *Id.* Thus, the *In re Morris* decision limited the Sixth Circuit's previous holding in *In re Omegas Group, Inc.*, by establishing the rule that in a bankruptcy case, no prior judicial determination is needed when state law recognizes, as a matter of law, the existence of a prepetition constructive trust.

■ In coming to its decision, however, the Court cautioned that "every wrongful acquisition or holding of property will not give rise to a constructive trust. For example, breach of contract or failure to pay a debt without more cannot give rise to a constructive trust." *Id.* On the other hand, the Sixth Circuit held that a very strong indication of an equitable duty to convey arises when the contract compelling the transfer is pursuant to court order. In the Court's own words:

> ... another fact convinces us that this case does not involve an ordinary equitable interest in a conveyance that might arise pursuant to a contract concerning real estate under Ohio law: the 'contract' between the parties here is the order of a court. The interest of the Ohio judiciary in ensuring the efficacy of its judgments gives the settlement a heightened basis for equitable relief and calls for imposition of a constructive trust.

*Id.* at 668–69.

In this case, of course, the order issued by Judge Katz compelled the DIP to convey the subject property to Preferred Properties. As such, Judge Katz's order

of specific performance, although not actually conveying legal title to the property, clearly conveyed all equitable interest in the property to Preferred Properties. Based therefore upon the Sixth Circuit's decision in *In re Morris*, it would seem appropriate to recognize the existence of a constructive trust.

■ In opposition thereto, however, the DIP argues that to find the existence of a constructive trust would "severely impair[ ], and would, in fact, likely even defeat the claims of other creditors, including those in superior classes." (Doc. 47 at pg. 4). However, the weakness with the DIP's position is that constructive trusts, by their very nature, give the beneficiary of the trust a superior interest in the trust res over other unsecured creditors. Thus, to adopt the DIP's position would mean, in practice, that the existence of a constructive trust could not be recognized in bankruptcy. It is obvious, however, that such a position is untenable. To begin with, the herein set forth decisions by the Sixth Circuit expressly recognize the existence of constructive trusts in bankruptcy. Furthermore, Ohio law clearly recognizes the existence of constructive trusts, and it is state law, not federal which controls the debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (absent a federal provision to the contrary, a debtor's interest in property is determined by applicable state law). Finally, case law clearly holds that, contrary to the DIP's argument, a constructive trust does not impair the bankruptcy priority scheme set up by Congress. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1419 (9th Cir.1985); *In re MJK Clearing, Inc.*, 286 B.R. 862, 881 (Bankr.D.Minn.2002). This is because preexisting interests in property are not subordinated or eliminated by the subsequent creation of a constructive trust.

Accordingly, for all the foregoing reasons, there is simply no basis for this Court to conclude that a constructive trust did not arise by Judge Katz's order of specific performance. As such, the DIP's estate, under 11 U.S.C. § 541(d), gained no equitable interest in the property which Judge Katz ordered to be transferred.

To thus encapsulate. First, under the Bankruptcy Code, the specific performance order issued by Judge Katz is neither a "debt" subject to discharge, nor a "claim" capable of being included in a plan of reorganization. Second, at the time Judge Katz issued his order for specific performance, a constructive trust was created in favor of Preferred Properties. As a result, the DIP's bankruptcy estate gained no equitable interest in the property under § 541(d). Based therefore upon these findings, it is the conclusion of this Court that relieving the stay of § 362(a) will neither appreciably hamper any proposed plan of reorganization put forth by the DIP, nor will lifting the stay be detrimental to other creditors in this case. Accordingly, the Court concludes that "cause" exists in this case to relieve the automatic stay so as to allow the specific performance order issued by Judge Katz to continue. Before concluding, however, a few additional matters raised in this case need to be addressed.

■ First, the DIP argues that "even if this Court finds that a constructive trust exists, there is nothing in the bankruptcy code which compels the conveyance of the real property in question to Preferred [Properties]." (Doc. 47, at pg. 4). To this statement the Court agrees. The constructive trust in this matter arose not from this Court, but from the District Court which is much better situated to handle the enforcement of its orders. Thus, to the extent Preferred Properties seeks an order from this Court to transfer

438

the property or have the DIP execute a purchase agreement, the Motion is denied.

 Second, Preferred Properties seeks a finding from the Court that the real property order by Judge Katz to be transferred is not property of the estate. The Court, however, again disagrees, as when a constructive trust is at issue, § 541(d) only excludes from the estate the equitable interest in the property, not the debtor's legal interest. *In re Cannon,* 277 F.3d 838, 849 (6th Cir.2002); *Universal Bonding Insurance Co. v. Gittens and Sprinkle Enterprises, Inc.,* 960 F.2d 366, 371 (3rd Cir.1992). As a consequence, the DIP's bankruptcy estate will obtain the benefit of any proceeds received from the transfer of the property to Preferred Properties.

Finally, both the DIP and Mr. Tillimon, in opposition to Preferred Properties Motion, have put forth what is, in essence, an equitable argument. In particular, it was argued that to exclude the sale of the property from the DIP's plan of reorganization would result in the imposition of an unfair hardship upon Mr. Tillimon, who is a major creditor of the DIP. (Doc. No. 44). In making this assertion, reference was made to many supposed irregularities in the District Court proceeding. In addition, Mr. Tillimon personally attacked the motives of some of the Parties associated with Preferred Properties. (Doc. No. 57). However, to even consider these arguments would place this Court in essentially the role of an appellate court. As such, this is simply not the forum to address such matters.

In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the Motion of Preferred Properties is GRANTED IN PART and DENIED IN PART.

It is *FURTHER ORDERED* that the automatic stay imposed by 11 U.S.C. § 362(a) is lifted so as to permit Preferred Properties to proceed with the Judgment Entry issued by the Honorable David A. Katz (Case No. 3:99 CV7342), wherein Indian River Estates was order to execute a purchase agreement and convey to Preferred Properties lot numbers 10, 12, 14, 15, 17, 19, 21, and 23 on Abygail and David's Creek's on Indian River Estate.