## No. 14,360.

CALIFORNIA SERVICE, INC. *v.* PEOPLE EX REL. COCHRANE, INSURANCE COMMISSIONER ET AL.

(88 P. [2d] 569)

Decided March 6, 1939.   Rehearing denied March 27, 1939.

Mr. B. F. REED, Mr. CLARENCE M. HAWKINS, for plaintiff in error.

Messrs. DINES, DINES & HOLME, Mr. MILTON J. KEEGAN, for defendants in error.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

THIS is a review of an order in a liquidating receivership of the defendant in error Pacific States Life Insurance Company, a Colorado corporation, formerly named Mountain States Life Insurance Company, in which the plaintiff in error, California Service, Inc., a Nevada corporation, formerly named George R. Johnson, Inc., asked the court for an order requiring the liquidating receiver to surrender to it the sum of $6,855.26, together with interest thereon at the rate of six per cent per annum from July 1, 1933, and that the same be declared a trust fund and to be the sole property of the plaintiff in error. The trial court denied the relief sought, and it is that order which plaintiff in error seeks to have reversed.

For convenience, in referring to the parties herein, the name Johnson company will be used to designate the plaintiff in error, and Pacific States Life Insurance Company will be mentioned as insurance company.

No answer or other pleading to the petition was deemed necessary, and its allegations concerning the claim were considered as denied by the trial court.

The alleged trust fund is claimed by the Johnson company under a written agreement between it and the insurance company, dated December 31, 1929. The controversy primarily relates to paragraph twelfth of said agreement, and it is admitted by all parties herein that its construction is decisive of the issues raised. That paragraph reads as follows:

"Twelfth: The party of the second part [Johnson company] agrees to deposit with and in the name of party of the first part [insurance company], such securities as may be acceptable as assets of the insurance company, an amount sufficient to cover all unearned premiums and pending claims in connection with policies issued under and by virtue of this contract. Said deposit to be increased or decreased from time to time and at all times to be sufficient to cover all the liability of the company

on any policies issued under this contract, in addition to the five thousand dollars ($5000.00) as specified in the following paragraph.

"(a) The party of the second part further agrees, and it shall upon the signing and ensealing of these presents, set apart, place and deposit with First National Bank in Oakland, California, the sum of five thousand dollars ($5000.00) in escrow and in trust for the following uses and purposes and none other, to-wit:

"(b) To guarantee and assure that second party shall and will at all times keep and maintain the reserves, both for unearned premium reserves and for and on account of reserve for pending and unpaid claims, at any time required and/or exacted under the insurance laws of the State of California and/or other states in which second party may from time to time operate under this contract, and

"To guarantee and assure that party of the second part shall and will pay and cause to be paid all debts by it under this contract agreed to be paid. Said deposit to be made and kept in cash or in securities mutually agreeable to the parties hereto; interest on said securities and deposit to be paid to party of the second part as same accrues and is collected and until demand is made as hereinafter in this paragraph provided.

"Said deposit shall be accompanied by escrow instructions in form and substance as provided in and by the letter attached to this contract and marked 'Exhibit A' and as such made a part hereof.

"It is agreed hereby that said deposit shall remain in trust with said escrow holder as aforesaid until the termination of this agreement; provided that none of said deposit is required for the purposes specified in paragraphs (a) and (b) above, in which contingency so much thereof as may be so required may be withdrawn from said deposit and so used.

"(c) The party of the second part agrees to furnish the party of the first part on the fifteenth day of each

month and covering the period of the preceding calendar month, a complete and true report showing the amount of premiums collected on the total policies in force and a complete report covering the said period of all claims paid and the amount of claims pending and unpaid on the last day of such preceding month.

"(d) Should the amount of the deposit as provided herein exceed the total amount required to cover the unearned premiums, pending claims and other liability, such excess amount shall be returned by party of the first part to party of the second part upon written demand of second party and a proper showing that said deposit is in excess of all liability requirements."

The deposit of $5,000 in escrow, as provided for in paragraph (a) in this contract, is not in issue here, it having been determined that this was a trust relationship and has been fully executed by return of stock to the Johnson company. The trial court correctly held that the clauses in paragraph twelfth relating to the reserve deposits have no reference to the trust in paragraphs (a) and (b) thereof.

This is an unusual contract. The insurance commissioner of Colorado testified that he had never heard of one like it. The former secretary-treasurer and director of the insurance company said it was unusual, and that he had heard of only a few like it. The president and the owner of virtually all of the stock of the Johnson company testified that he had a similar contract with a New Jersey insurance company, based upon the same principle.

Briefly, the insurance company entered into a written agreement whereby the Johnson company was to "manage and carry on further the plan of health and accident insurance in correlation with banks and building and loan associations" for the insurance company, in the sale of health and accident insurance, retaining all of the premiums collected with the exception of, at first, seven and one-half per cent and later five per cent, which was

to be paid to the insurance company without qualification. Johnson company sold the insurance in the name of the insurance company, which was to be primarily liable upon the policies sold. Johnson company was to satisfy all claims against the policies sold by it, and in order to guarantee performance, to deposit with and in the name of the insurance company, such securities as should be acceptable as assets of the insurance company in an amount sufficient to cover all unearned premiums and pending claims. At first there were securities deposited, but later the transactions were payments in cash. All payments in cash, as well as securities made under the agreement were placed in the reserve account of the insurance company and were so reported as a part of the assets of the company to the insurance commissioner of the state of Colorado, except the $5,000 deposited in escrow hereinbefore referred to. The contract contains a provision for the return of excess funds from the reserve deposit after a written demand and showing by the Johnson Company, as claims under the policies were satisfied and the insurance company's liability was reduced.

To further illustrate the nature of this contract, we have A, who is an authorized insurer, agreeing with B that B may conduct an insurance business in the name of A, providing it pays A a certain percentage of the premiums and sets up a fund protecting A against unearned premiums and any claims on the policies. It seems to be a method by which B can engage in the insurance business in a separate compartment without being authorized by law and without being subject to any regulatory power. According to the construction placed on it by the Johnson company in its relation to the general creditors and policy holders in the insurance company, it was a typical "heads-I-win-and-tails-you-lose" arrangement. The validity of this agreement is not seriously questioned, if it is so construed that it is not a fraud upon the general creditors and policy holders.

The funds sought to be impressed with a trust in the instant case under the agreement became the assets of the insurance company, and a part of the reserve liability, not only as to the insurance written under this agreement, which was solely accident and health, but also as to any other policy holders having claims against the company.

There is no serious dispute about the facts. The only fact challenged is whether the Johnson company had knowledge that the securities and deposits made by it under the agreement would become a part of the admitted assets of the insurance company. The trial court did not believe the testimony submitted on that issue by the Johnson company, and in our opinion its belief was justified in that respect.

Having in mind the purpose of the contract, as well as the actual facts relating thereto, including the carrying of the cash deposits in the general account of the insurance company, we reach the conclusion that this was not a trust fund, but that the interest of general creditors of the insurance company in these deposits attached before the Johnson company had satisfied the liabilities upon the policies sold by it. In reaching this conclusion, we also are mindful of another element, and that is the payment of interest at the rate of six per cent per annum, payable monthly, by the insurance company to the Johnson company for the use of this cash. Restatement of the Law of Trusts, section 12. While there is no statement in the written agreement for the payment of interest, as applied to reserve deposits here involved, the evidence is clear that that actually was done until the insurance company was declared insolvent.

Counsel for the Johnson company contend that the "fact that deposit was made with the insurance company rather than with some other party as holder is merely incidental." That argument is wholly fallacious. The answer to this contention is found in the evidence of the secretary-treasurer of the insurance company, a

witness for the Johnson company, whose testimony on this point (as abstracted) is as follows:

"Pacific States Life was always on a legal reserve basis. Legal reserve of this type of company is defined by the insurance laws of each state, and it is made up largely of unearned premiums and reserves for pending claims. In the legal reserve type of company the amount of those reserves is set up as a liability, and in order to be solvent they have to set up admitted assets equal to those reserves. This is required by the laws of most states. Ordinarily, in the business that the Pacific States company wrote either directly or through an agent, they owned assets equal to the legal reserve, or tried to hold that much assets.

"Now, under this agreement the plan in substance was that George R. Johnson, Inc., as agent for Pacific States, secured this business, issued policies signed by Pacific States on all the business, and the insurance written under this contract was on insurance policy forms of Pacific States Life Insurance Company. The health and accident policies under this contract had a certain reserve made up of the unearned premiums plus the pending claims at any given time. In the annual statements the Pacific States Life Company set up the reserves as a liability. And the moneys paid by Mr. Johnson were set up as an asset, an equivalent amount. We set up the equivalent amount of assets he had on deposit with us as an asset of the company to guarantee the reserves.

"I have read the contract. Under paragraph numbered twelfth I would say it was contemplated that it was perfectly proper for our company to set up as an admitted asset such moneys as it had received from Mr. Johnson, equal to the reserve on all that business. That was our guarantee, and if we didn't pay it out of some other funds, it was our privilege to pay those claims out of those funds."

Counsel for the Johnson company cite what they say

is a case very much in point, namely, *Andrew v. Citizens State Bank*, 203 Ia. 345, 212 N. W. 745.

It is not difficult to distinguish that case from the instant action. There the bank procured a loan of bonds, to be used as collateral in order that it might borrow money more readily at a lower rate of interest. It clearly was a case of bailment. The ownership and title to the bonds remained in the bondholder. There was no transaction in that case by which the owner of the bonds went into or took over a part of the banking business. The bank had no interest or title to the bonds.

As was well stated by the trial court in the case at bar, "If the cash were to go to the company as a part of its reserve, then of course title must pass, and no title to the funds could revert to Johnson until at least the liabilities under the policies sold by him had been satisfied."

The trial court committed no error in finding that the deposits involved here were not trust funds and that the claim of the Johnson company is a general claim, to be allowed without interest.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK dissent.